I'm Tim Cullen. I represent B&B Hardware. I plan to reserve five minutes for rebuttal. Where to start? Twenty-five years of litigation. Depending on how you count it, this is our fifth trip to this court. We'll try to make your clients happy by ending it.  Let's start with the easy thing. Hargis continues to advance on cross-appeal that is entitled to attorney's fees as an exceptional case under the Lanham Act. Those are rare. That's a high burden. Hargis continues to maintain that B&B's case is wholly frivolous, made out of whole cloth, meritless, all those kind of adjectives. The reality before this court is that, in fact, B&B prevailed on an important legal claim to the United States Supreme Court. And below, B&B finally was vindicated with a jury verdict that Hargis infringed on their trademark and committed false advertising and false designation of origin. So it's hard for me to understand, under any view of this case, how Hargis should deserve attorney's fees as an exceptional case under the Lanham Act. So hopefully that checks one box off the list of things we have to cover. So if B&B won at trial, finally, and got a verdict for trademark infringement, then why are we here? We're here because the jury was confused and the district court was likewise confused about the unique remedy that B&B asked for under the Lanham Act. That was disgorgement of Hargis' profits. Throughout the case, backing up, B&B gave notice to the court in pretrial filings that that was the remedy they chose, disgorgement. But throughout the case, Hargis defended as if B&B was asking for their own lost profits. That hopelessly confused the issues in the jury. B&B didn't put on any proof of their own lost profit. I thought the evidence was to the effect that Hargis' profits were not attributable to the infringement. That was the basis for the verdict on that issue. Yeah, and under the evidence, that's impossible, Your Honor. Even the district court... Well, you know how uphill an assertion that is to an appellate court. Absolutely. Yes. That point of view would annihilate the Lanham Act. And I've tried to think of a better analogy, but I used one in the brief about Coca-Cola and Coca-Cola, spelled differently but phonetically identical and both produce soft drinks. And if the infringer could come in and say, I've sold $100 million... I know what you're saying, but you're creating one factual hypothetical and saying that that establishes that this entirely different factual situation, the ruling has gutted the Lanham Act. I don't accept that. This is fact intensive. It is. And Hargis had all kinds... I mean, an analysis of their marketing, as I understand the evidence attempted to do, permitted a reasonable... at least the district court thought permitted a reasonable jury to conclude that its profits weren't attributable to the infringing similarity of the names. Again, that... Theoretically, that's entirely plausible. So the ruling does not gut the Lanham Act. There is no proof of that, Your Honor. Well, okay, that's a different issue. Every single bolt and screw that Hargis sold was under the phonetically indistinguishable name of seal tight. And it was already established since 2007 that that was confusingly similar to my client's seal tight. You're starting everywhere but the fraud determination that it seems to me is the linchpin of your hurdles on appeal. If you can't convince us that the fraud finding must be overruled, I don't see how we ever get to positive relief for B&B. And that is a point that we have raised, Your Honor, on why the fraud finding must be reversed. And I'd be happy to address that. First of all, there was no fraud. Don't you... How do you get relief if you can't overturn the fraud finding? On what basis could we order relief if the fraud finding was correct, was sustained, must be sustained under jury verdict standard review? Yeah, we have to reverse the fraud finding, Your Honor, for sure. Okay. And you're eventually going to get there. Yes, Your Honor. What's the standard of review? On that issue. Abuse of discretion based on the trial court's, the motion for new trial and the ruling on the motion for new trial. And the judge's application of the fraud finding to the equity analysis. Remember, the jury's verdict here was advisory and it is the role of the trial court to then apply the equities. The jury should... Because you did not have that argument in your motion for judgment as a matter of law. Right? I thought that that's crystal clear. Okay. And we'll go with plain error, Your Honor. Proceed. Could I ask a question? Yes, sir. Just a slight detour just for clarification. What's the time period of infringement that is involved in this trial? I mean, this case has been going on a long time and registration has been gained and lost and all kinds of twists and turns. And I just would like clarification as to what time period was actually involved in this trial. For purposes of this trial, the trial court entered an order defining the date range, and that's at Joint Appendix 1197. And the start date was June 28, 2006, and the end date was October 12, 2013. That end date was because that's the date that the trial court found the effectiveness of B&B allowing their mark to lapse. And I'm sure you're going to hear about that in Hargis' argument. So we have a time window there of four, six, seven years. And both experts have made their damage calculations based on that seven-year time window. Thank you. Back to Judge Loken's comment about the fraud. Fraud has to be proven to the hilt. One of the elements is it has to be a material misrepresentation impacting the decision to register the mark. I raised this in the briefs that the jury instruction was confusing on that point because really the evidence was challenging. I didn't see a jury instruction error in the issues raised on appeal. Did I miss it? I quoted at length from the jury instruction. Is it in your statement of the issues on appeal? If it's not, don't talk about the jury instruction. Seriously, this is why it's been going on for 25 years. It's raised and discussed in the brief, Your Honor. Is it in the statement of issues? You know the FRAP rule? Yes, Your Honor. Is it in the issues alleged to be reversible error? It is part of the fraud analysis. All right. But if it's not reversible error, how is it part of the fraud analysis? It's briefed, Your Honor, and there was confusion about whether the misrepresentation had to be material to the registration of the mark or to the later filed affidavit of incontestability. It's one of the factors in why we allege that the fraud finding cannot be supported. Was there a proposed instruction to make the distinction clear to the jury? That was the accepted instruction, Your Honor. What I'm saying is the facts do not meet. Wait, wait, wait. Accepted instruction. That doesn't answer my question whether there was a proposed different instruction. Judge, I'm using the jury instruction to establish the law that the facts had to meet. You want us to believe that the jury got confused, and you've stated a possible basis for confusion. I think that the district court assumed that the fraud went to both. Both the registration and the incontestability? Yes. Or at least that the effect of the fraud with regard to the procured incontestability, the effect of that was to return, as I understand the district court's reasoning, was to return the world to the point at which the first verdict found no infringement. In which B&B still owned the mark, and that's... And failed to approve, I guess, I don't know about it, failed to approve registration, failed to approve infringement, according to jury one. Back to the finding of fraud based on the affidavit submitted to the TTAB. It was about whether there had been any final action that prevented B&B from ownership of the mark. Before the 2000 trial, B&B owned the mark. After the 2000 trial, B&B owned the mark. No one canceled it. No further proceedings were had. B&B continued to use the mark for the last 20 years. And so there wasn't any fraud. I've argued two more bases that I don't have time to address, but one of them was advice of counsel, which makes it impossible for B&B to have the required scienture to commit fraud. I would like to save my remaining four minutes for rebuttal. Thank you. Ms. Sinsday? May it please the court. I'm going to lower this. Sorry about that. May it please the court. Colleen Sinsdack for Hargis Industries. You have heard my opponent acknowledge that there is no way for them to prevail on this appeal without overturning the jury's fraud holding. You have also heard my opponent acknowledge that that is a plain error review. And you have seen in the briefing that there was ample evidence supporting the jury's fraud determination. That is reason enough to affirm the decision on the merits. But there is actually far more. In order for B&B to prevail on this appeal, it needs to win on four separate arguments. Two of those arguments are actually on plain error because B&B is challenging both the jury's sufficiency of the evidence finding on fraud and the sufficiency of the evidence as to disgorgement. B&B cannot possibly overcome this hurdle. Indeed, B&B's pattern and practice of deceptive and outright fraudulent conduct throughout this litigation merits an award of exceptional fees under the Lanham Act. Now you conceded. You said the magic words. You only get fees in exceptional cases. That's correct. And even then it's a matter of discretion. So you got a big hill too. We have a big hill, but we believe we have a lot more power to climb it. In this case, as we pointed out in our briefing and as the D.C. Circuit held and recognized in Knoxell, the legislative history of the Exceptional Fees Act actually demonstrates that fraud is the paradigmatic case that the Exceptional Fees Award was created for. But the Lanham Act doesn't adopt that legislative history. It does not adopt the legislative history. And that leads to exceptional circumstances. Exceptional cases. It stands to reason that fraudulent behavior, fraudulent behavior that in this case led to more than 10 years of litigation involving three separate courts in litigation that never should have occurred. If that's not an exceptional circumstance, it's difficult to imagine what is. But that isn't even all that we have. When this case was last before this court, the court affirmed an award of fees, noting that there was already a pattern in practice of deceptive conduct. We had B&B fabricating an entire website in order to support its infringement claim. We had B&B manufacturing evidence with respect to customer confusion. So even before the jury found by clear and convincing evidence that there was fraud. Now where are we going to find, where is the fact finders ruling on this misconduct you're talking about? The manufactured confusion evidence and all that stuff. Where is there a finding to that effect? So after the 2010 trial, the district court reached its, made its award of fees in part based on that. And this court affirmed that. So that's water over the dam. It's not, it is and it isn't. In this case the. Well and after that they took, they litigated and prevailed in the U.S. Supreme Court. And you're talking about this has been ridiculously manufactured litigation? I am because the jury found by clear. Well I thought the Supreme Court was wrong but obviously they had a big majority. Well I agree that the Supreme Court was wrong but that in fact is beside the. No, no, no, they weren't wrong. They were. Let me just say that that is in many ways beside the point because. It's not, it demonstrates the legitimacy of the litigation. The reason that it does not in this case is that. How far back do you want fees? We want fees back to 2006 which is when the. I thought you just said some of those were awarded already. No because the holdings were vacated when this came back down on remand. So just to, I just want to clarify our position with respect to that. Because it's where I began. So in 2006 B&B swore a fraudulent affidavit. Because it swore that fraudulent affidavit. It was permitted to rebring its infringement litigation. That it was otherwise absolutely barred from bringing. There's no question about that. There was a jury finding in 2000. In 2001 this court affirmed that jury finding. So B&B was a flatly precluded from initiating litigation. The way that it got around that. Was to submit a false affidavit to the PTO. And obtain incontestable status. At that point it was able to move forward. On what should have been a barred litigation. It was not until this last jury trial. That we were finally able to present our affirmative defense. That that 2006 affidavit was false. And that none of this litigation ever should have occurred. So it is not that we are in any way saying. You should revisit that Supreme Court holding. We are not saying just to be clear. I may have some personal skin in the game on that one. But no we're not asking for you to revisit that. We're not asking for you to revisit any of these holdings. We're asking you to recognize. That none of this litigation should have happened. That this should have been endgame in 2001. When that jury determination was upheld. And that instead BNB used this fraudulent affidavit. To reignite the litigation. And to force three separate courts. Three separate courts. To undergo lots of time, energy, resources. All in a matter that should have been foreclosed. That was precluded by res judicata. What case absolutely forecloses the argument. That the setting aside of incontestability. That could have been obtained prior to the first jury's verdict. Requires restoration of that verdict. I'm sorry. The incontestability was the TTAB action came after. The first jury found no infringement. Just to be clear. The TTAB action. Are you referring to the 2003 TTAB? The action that caused the Supreme Court to keep this alive. That was the 2007. And that was merely a rejection of Hargis's attempt to register its trademark. But even that 2007 TTAB decision recognized that there had been this. When did it begin? I thought it wasn't legally incontestable when the first jury ruled. Or the jury couldn't have ruled that way, right? That's correct. So when was the TTAB action that made it incontestable? There was never a TTAB action with respect to incontestability. In 2006, B&B submitted to the PTO. I'm distinguishing here because it's not the TTAB. It's the PTO. It submitted an affidavit. It was entitled to incontestable status. Because there had never been a final decision adverse to its right to register the mark. So it submitted that. And as the jury heard, all that the PTO does at that point is say, is there an affidavit that meets their statutory requirements? Check. Yes. And so at that point. You're not getting it. My question is why is it so cut and dried that your client gets the benefit of the first jury finding because the Supreme Court's reversal turned out to be a flawed factual basis? Thank you, Your Honor. So there's actually two separate requirements that you have to meet in order to prevail on infringement. One is whether you have a protectable mark. And you do not have a protectable mark if it's merely descriptive. So that's what that 2000 trial was about. Yeah, but if it's incontestable, you can't litigate that anymore. Well, but that's correct. The infringer can't rely on that if it's incontestable. Unless the alleged infringer has a defense to incontestability such as fraud. And that is the defense that we presented and that the jury found by clear and convincing evidence we had triumphed on. If you are able, under the statute, if you are able to show fraud, then the holder of the mark is not entitled to any of the benefits of incontestability. So basically once Hargis was able to prevail and say look. But the T. It's very confusing. Well, it's been a few years since I knew the details. But the TTAB then took action at B&B's behest to establish the incontestability. No, so B&B actually was, sorry, the TTAB was never really. They took action that the Supreme Court said had to have a preclusive effect. What was that action? That was with respect to the other thing that you need to prove in order to show infringement, which is likelihood of confusion. So there's two problems. So it is, frankly, it's a long history. It's confusing. But basically in 2000, Hargis had won that B&B did not have a protectable mark. And therefore the jury never even considered whether there was a likelihood of confusion, the other thing that had to be shown in order to. So that is the basis for my question. Right, exactly. Why does the jury verdict suddenly drive the train here? So it has nothing to do with. So just to go through a little bit of the history because I think it will help. So in 2006. No, don't give me the history. Give me why the district court felt the jury verdicts that you just said didn't consider the issue the Supreme Court found compelling is suddenly restored without a retrial of that issue. Exactly. So again, in order to show infringement, you have to show both likelihood of confusion and that you have a protectable mark. So all the Supreme Court was considering was the likelihood of confusion bundle. And nobody is here questioning the likelihood of confusion that B&B got what it was entitled to there, which is an instruction to say, yes, there was likelihood of confusion because as the Supreme Court said, that 2007 TTAB holding was absolutely determinative on likelihood of confusion. But that's not enough for B&B to win. It also has to show that it has a protectable mark. And that is where the fraud comes in because the only way that B&B was showing that it had a protectable mark was by pointing to this incontestability affidavit. It was saying, look, we're incontestable. That conclusively establishes that we have a protectable mark. So once Hargis was able to prevail and say, no, that incontestability affidavit, that was obtained through fraud. At that point, B&B could not demonstrate that it had a protectable mark. So I don't understand why not. Because it had already been found in 2000. But the fraud went to the obtaining of incontestability, not the registration, not the protectability. That's correct. But in 2000, there was a jury verdict made final by this court saying, that mark is not protectable because it's merely descriptive. And the only way that B&B was able to get past the preclusive effect of the jury finding on protectability was to say, we're incontestable. That was the changed circumstance they were pointing to. They said, actually, we're incontestable. So once we overturned that incontestability finding, at that point, there was nothing. We were right back to the preclusive effect of a jury finding in 2001 saying, this mark is not protectable. So it is a little bit because of these two different requirements that have to be met for infringement. There's a lot of procedural history you have to kind of wade through. I'm afraid, though, as I listen to you, I think you're attacking what the jury found in this case. They found infringement, false designation of origin, and unfair competition. Don't, don't, you seem to be kind of having a collateral attack on that. Tell me that you're not. Oh, no, absolutely not. So they found on those things, they were directed, that was essentially a directed verdict. But what we brought is the affirmative defense of fraud. And they found for, they found for Hargis on the affirmative defense of fraud. So to be clear, once they had found for Hargis on that affirmative defense, that necessitated entering judgment on behalf of Hargis. But that's, that's why there is a little bit of this oddity in this case where we have them both. Well, and what's the, what's the, what's the, your best case for that leap? The, that, that the. That the, that the finding of affirmative defense of fraud now somehow permits a collateral undermining of this jury, the first half of the jury verdict. It's not a collateral undermining. It's simply a typical affirmative. Putting it aside. No, no. It's making it a non-action. It's an affirmative defense. So it's a normal sort of, you find that the requirements are met, but then you find that the affirmative defense. And there's a statute, you know, this is a statutory defense to, to incontestability, which is under 15 USC 1115B. This is a little bit of a peculiar case. So there's not another case squarely on point. It would be truly surprising if there was. Just if for some reason this court was able to get over the plain error finding on fraud and get over the fact that there was, there was in fact ample evidence supporting the fraud verdict and the fraud and get over the fact that that entitled Hargis to, to, to, to judgment on all of its issues. I'd also note that there is a jury finding that none of Hargis's profits were attributable to, to the infringement that then that finding was backed up by a separate finding by the court that under equity B&B would not be entitled into to any disgorgement. So, and, and then I'd never even gotten into the separate argument that in 2013 B&B allowed its registration to lapse, did not tell the Supreme Court that in fact misrepresented the status of its registration to the Supreme Court, misrepresented the status of its registration to this court and to the district court. So we really have a pile of reasons to both hold for Hargis and to award a fees for this being an exceptional case. If there are no further questions, thank you. Thank you. Mr. Cullen for Ramon. I've been in this case 10 years. Mr. Yarbrough has been in it longer than I have. Other attorneys have been involved, but I hear the same refrain over and over again that my client Larry Bogatz is a dirty cheat liar. And it's just, it's not true. And it's been a consistent theme in this case to try to shift away from the important legal issues. I've just asked the court to weigh that with a grain of salt when you hear someone making those claims against a good man who, you know, counsel's statement was they have more power to climb and that's true. And that's something that's recognized by the Lanham Act is you shouldn't allow the Walmarts of the world to stomp on the little guys just because they have more power to climb. And that's why disgorgement is so important in this. And I know, I know we got to talk about fraud. So I'm going to get back to that. There is a case that's startlingly on point and it's cited in my brief and it's far out. 247 F 3rd 996. And it talks about a final judgment and whether an applicant for incontestability, whether they misrepresented the final, the status of the final judgment. It's on page 51 of my opening brief. Judge Benton, I see you flipping the pages. I found it. Go ahead. And this case is exactly on point with what we have here. Mr. Bogarts, in good faith, did not believe that 2000 verdict was a final judgment against his rights in the mark because he continued to use the mark because the mark continued to be published on the principal register. On that, though, the district court made an express finding, right? That they Bogart's declaration was false. Words like that. He's got a long quote on 1437 of the appendix. Yes, your honor. But that's what we're contending is wrong. Is that finding is not supported by the evidence where and again, this far out case discusses it. Not only do you have to prove fraud to the hilt, but you have to have evidence of the state of mind of the person filling out the affidavit. And in Larry Bogart's testimony, that's the only possible insight you could have into his state of mind. He did testify. And it's clear. Right. He did testify. Yes, your honor. Proceed. Yes. And he also addressed this in a deposition affidavit. But, yes, he testified on this point and explained how he believed the passage of time had cured that descriptiveness problem and that that was not a final action against his mark because he continued to use his mark. And it continued to be registered even after that verdict. And there was no attempt to cancel the mark or anything like that. So, first, the affidavit's not false. Second, there's no evidence of a malintent in his mind. There's no evidence that he was trying to defraud anyone. Further proof of that is the fact that the TTAB was well aware of all of this litigation. They had tons of filings. They referenced the 2000 case in that 2007 decision where they established likelihood of confusion. Counsel, a basic point is was the representation false? It's not. And you say it's not false. Yes, your honor. You don't think the jury verdict is something that's inconsistent with the representation? The jury verdict is inconsistent with the representation. Right. The jury bought into this that Larry was some kind of liar, but the evidence does not support that. And that's the argument I'm trying to make, your honors, for at least three reasons. But it's the 2000 verdict, right, that is the final decision that's adverse? Yes. Yes. But, again, we contend it's not a final decision adverse to ultimately his mark because it continued to be registered at the office and he continued to use it. And with the passage of time, that descriptiveness issue was cured. And Hargis didn't raise this in 2010. This is a new issue today, but it was available in 2010 and they didn't raise it. Finally, my third point on that on why it wasn't fraud is because Larry Bogat specifically testified that he relied on advice of counsel in making that checkbox on that affidavit. And that's something that he's maintained all along but has never really been adequately addressed or distinguished. I'm out of time. I appreciate your honors' attention to this case. I know it's a special case. Thank you for delving into it one more time. Thank you, counsel. It is a complicated case and you've helped, once again, straighten it out and we'll take it once again under advisement. Thank you, everyone.